## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

**SAFE WAY TRANSPORT, LLC**　　　　　　　　　　**CASE NO. 23-00103-JAW**

**DEBTOR**　　　　　　　　　　　　　　　　　　　　**CHAPTER 7**

## TRI-STATE TRUCK CENTER, INC.'S VERIFIED MOTION FOR CONTEMPT AND AWARD OF COSTS, FEES, AND PENALTIES

Creditor Tri-State Truck Center, Inc. d/b/a Tri-State Leasing ("**TSL**") respectfully requests that the Court enter an order (1) holding Safe Way Transport, LLC ("**Safeway**" or "**Debtor**") and Kina Sanders ("**Ms. Sanders**") (collectively, the Debtor and Ms. Sanders shall be referred to as the "**Safeway Parties**") in civil contempt of the Court's *Order Granting Tri-State Truck Center, Inc.'s Motion for Examination of Debtor and Production of Documents Pursuant to Rule 2004* (Doc. 46) ("**Safeway 2004 Order**"); (2) requiring the Safeway Parties, jointly and severally, to pay TSL's costs and attorneys' fees incurred as a result of the Safeway Parties' contempt, including TSL's costs and attorneys' fees incurred in preparing and prosecuting this motion, in obtaining subpoenaed records, in re-deposing the Debtor, and in preparing for the Debtor's re-deposition, within 30 days of entry of an order granting this motion; (3) imposing a $100 per diem fine on the Safeway Parties, jointly and severally, for each day they continue to fail to comply with the Safeway 2004 Order; and (4) compelling the Safeway Parties to fully comply with the Safeway 2004 Order by producing all responsive documents in Safeway's possession, custody, or control and making Safeway, through both Kina Sanders and Ken Sanders, available for a deposition on a date certain.

1

## FACTUAL AND PROCEDURAL BACKGROUND

**A.      The 2004 Motions and Orders**

For years, TSL has leased and repaired a significant amount of trucking equipment for Safeway/Ken Sanders. TSL knows Ken Sanders well and the type of person he is. When Safeway filed for bankruptcy several days before the hearing on TSL's state court summary judgment motion, TSL knew that Mr. Sanders had no intention of getting out of the trucking business. Rather, it was TSL's strong suspicion that Mr. Sanders intended to simply start a new company and otherwise continue business as usual, but without having to pay the debts he accumulated through Safeway.

For this reason, on March 22, 2023, TSL filed motions for the Rule 2004 examinations of Safeway and KH Enterprise LLC ("**KH Enterprise**") – an LLC that operates out of the same location, has the same registered agent, operates the same line of business (truck hauling), and has common officers and directors as Safeway. (Docs. 42-43) ("**Rule 2004 Motions**").[1] Specifically, Kina Sanders is the sole member of Safeway and a Manager/Member of KH Enterprise whose income she reports on her tax returns.[2] Ken Sanders – Kina's husband – runs Safeway and is the Manager, Member, and President of KH Enterprise. TSL strongly suspected – and discovery has confirmed – that KH Enterprise is the alter ego and/or successor and/or mere continuation of Safeway, and that KH Enterprise, Kina Sanders, and Ken Sanders are the recipients of fraudulent transfers from Safeway. The discovery sought through the Rule 2004 Motions was designed to probe these issues.

---

[1] Creditor Northpoint Commercial Finance, LLC ("**Northpoint**") joined in the Rule 2004 Motions. (Docs. 44-45).

[2] Because the Safeway Parties failed to produce Safeway's organizational documents, TSL cannot confirm that Ms. Sanders is Safeway's sole owner; however, she represents herself as Safeway's sole owner.

On March 22, 2023, the Court entered the Safeway 2004 Order (Doc. 46) and an *Order Granting Tri-State Truck Center, Inc.'s Motion for Examination of KH Enterprise LLC and Production of Documents Pursuant to Rule 2004* (Doc. 47). The Orders required Safeway and KH Enterprise to produce the documents listed in Exhibit B to the Rule 2004 Motions within fourteen (14) days of entry of the Orders, or by April 5, 2023. The Orders further required Safeway and KH Enterprise to make themselves available for depositions on the topics listed in Exhibit A to the Rule 2004 Motions within twenty-four (24) days of entry of the Orders, or by April 15, 2023. Obviously, the purpose of requiring the documents to be produced in advance of the depositions was so that TSL's counsel would have the benefit of the documents in preparing for the depositions.[3] Inherent in the Court's order for the Debtor to produce a witness to testify on the topics listed in Exhibit A was that the witness be knowledgeable and testify truthfully.

**B.     Safeway and KH Enterprise Failed to Produce the Documents the Court Ordered Produced.**

On April 5, 2023, Bryant Guy, Safeway's counsel, emailed TSL's counsel stating that Safeway and KH Enterprise would make themselves available for deposition on April 12, 2023. Mr. Guy subsequently stated that Ms. Sanders would be the corporate representative for Safeway and that Mr. Sanders would be the corporate representative for KH Enterprise. Prior to April 12, 2023, KH Enterprise produced no documents whatsoever. Safeway produced only the following limited set of documents:

      a.  Safeway's 2021 tax return (produced 4/11/23);

      b.  Wells Fargo Account Statements (Account No. 4277) from January 2022 – May 2022 (produced 4/11/23) and October 2022 – January 2023 (produced 4/5/23); and

      c.  BankPlus Account Statements (Account No. 7432) from July 29, 2022 – March 31, 2023 (produced 4/11/23).

---

[3] Exhibit A and B are appended to this Motion.

Despite promises to do so, Safeway has not produced any additional document since, and its counsel stated that Safeway will not be producing any additional documents. (**Ex. 1, W. Drinkwater and B. Guy Emails Regarding Document Production and Deposition Scheduling**). Thus, Safeway has produced none of the following documents the Court ordered it to produce:

1. All of the Debtor's founding, organizational, or governing documents, including, but not limited to, articles of formation, bylaws, operating agreements, membership agreements, and the like, and all documents amending or supplementing any such documents.

   a. Ms. Sanders admitted that an attorney assisted her in purchasing Safeway, prepared documents reflecting her ownership of Safeway, and promised to provide those documents after the deposition. (**Ex. 2, Safeway Deposition Transcript** pp. 53-55). It is inconceivable Safeway has no LLC agreement/operating agreement. These documents are important to determining which individuals besides Ms. Sanders are legally responsible for Safeway's conduct.

2. Except as noted above, since January 1, 2020, all bank statements, account statements, check images, deposits, and any other documents reflecting deposits, withdrawals, balances, or transfers for any account in which a Debtor is or has been an owner or signatory.

   a. TSL was forced to subpoena the remainder of the Wells Fargo and BankPlus documents and documents from Trustmark National Bank. TSL does not know whether Safeway has maintained accounts at any other banks. These documents are obviously essential for identifying fraudulent transfers, payments to insiders, determining whether Safeway's former customers have simply switched to doing business with KH Enterprise or other Sanders entities, Safeway's assets and the dissipation of those assets, and whether Safeway has assigned its funding sources (factoring agreements) to KH Enterprise.

3. The signature card(s), including amendments, for any financial account in which a Debtor is or has been an owner or signatory.

   a. TSL obtained signature cards for the Wells Fargo, Trustmark, and BankPlus accounts; however, TSL does not know whether other responsive documents exist.

4.    Since March 6, 2021, all documents relating to any monetary holdings in which the Debtor has had any interest, including but not limited to checking accounts, savings accounts, money market accounts and/or investment accounts, copies of all certificates of deposit, stock certificates, bonds and/or mutual funds statements, and any other cash deposits or holdings.

      a.    No responsive documents were produced. See (a) to No. 2 above.

5.    The Debtor's 2020 tax returns.

      a.    TSL was forced to subpoena this document from Safeway's CPA firm, Silas and Simmons, which the Debtor failed to disclose on page 18 of its Schedules (Doc. 28). Kina Sanders also admitted in her deposition that Silas and Simmons maintained Safeway's books and records. (Ex. 2 pp. 43-45). The documents obtained from Silas and Simmons show Kina Sanders claiming KH Enterprise income on her individual tax returns and list 48 depreciable assets owned by Safeway but which have disappeared without explanation.

6.    All of the Debtor's minute books, corporate records, minutes, amendments to minutes, actions by managers or members, amendments to records, and any and all related records and/or documents.

      a.    The Debtor testified no such documents exist; however, given the overwhelming amount of false testimony the Debtor gave during its deposition, TSL does not know whether such documents exist.

7.    Any and all documents relating to any pending litigation involving the Debtor or the Debtor's members.

      a.    No responsive documents were produced. TSL is aware of the two lawsuits listed in the Debtor's Schedules and does not need documents related to those lawsuits. However, TSL does not know if there are other undisclosed lawsuits.

8.    Any and all documents relating to any claims against the Debtor or any of its members which have been settled or otherwise resolved.

      a.    No responsive documents were produced.

9.    Since March 6, 2022, all invoices/bills submitted by the Debtor.

      a.    The Debtor failed to produce any documents responsive to this request. These documents are needed to determine Safeway's customers and whether Safeway's former customers have simply switched to doing business with KH Enterprise or other Sanders entities. These documents are

also relevant to show whether KH Enterprise has received payment for invoices submitted or work performed by Safeway. These documents will also show whether Ms. Sanders was testifying truthfully when she stated she did not know the identities of any of Safeway's customers and will provide relevant information regarding Safeway's financial condition.

10.   Since March 6, 2022, all purchase orders or similar documents requesting services from the Debtor.

    a.   The Debtor failed to produce any documents responsive to this request. These documents are needed to determine Safeway's customers and whether Safeway's former customers have simply switched to doing business with KH Enterprise or other Sanders entities. These documents are also relevant to show whether KH Enterprise has received payment for invoices submitted or work performed by Safeway. These documents will also show whether Ms. Sanders was testifying truthfully when she stated she did not know the identities of any of Safeway's customers.

11.   Since March 6, 2022, all contracts the Debtor has been a party to.

    a.   The Debtor failed to produce **any** documents responsive to this request. These documents are needed to determine Safeway's customers and whether Safeway's former customers have simply switched to doing business with KH Enterprise or other Sanders entities. They are also relevant to determining whether KH Enterprise has assumed or received assignments of Safeway's contracts. They are further relevant to show any leases, purchases, or sales of the Debtor's assets and would shed light on the unexplained disappearance of significant assets of the Debtor appearing on its financial statements and tax returns obtained via subpoena. These documents will also identify the factoring companies the Debtor has contracted with, and such companies may have information related to the Debtor's customers, financial condition, assets, and liabilities. Numerous responsive documents were obtained via subpoena so the Debtor cannot claim no such documents exist.

12.   Since March 6, 2022, all documents relating to any accounts receivable or payable of the Debtor.

    a.   The Debtor failed to produce any documents responsive to this request. These documents are needed to determine Safeway's customers and whether Safeway's former customers have simply switched to doing business with KH Enterprise or other Sanders entities. They are also relevant to the Debtor's financial condition. These documents are also needed to determine whether KH Enterprise has assumed or received assignments of Safeway's funding sources. Responsive documents were obtained in subpoena responses so the Debtor cannot reasonably claim no

such documents exist.

13.    Since March 6, 2021, any financial statement, profit and loss statement, balance sheet, or any other compilation of the financial condition of the Debtor.

    a.    The Debtor failed to produce any documents responsive to this request. These documents are needed to determine Safeway's financial condition, its customers, and whether Safeway's former customers have simply switched to doing business with KH Enterprise or other Sanders entities. They are also needed to determine whether KH Enterprise has assumed or received assignments of Safeway's funding sources. They are also relevant to determining the Debtor's assets which are inexplicably absent from its Schedules. Numerous responsive documents were obtained via subpoena so that Debtor cannot reasonably claim no such documents exist.

14.    Since April 30, 2020, all documents relating to any transfers of assets from the Debtor to any other person or entity.

    a.    Other than as reflected in the limited bank statements provided, the Debtor failed to produce any documents responsive to this request. These documents are needed to determine Safeway's customers and whether Safeway's former customers have simply switched to doing business with KH Enterprise or other Sanders entities. They are also needed to determine whether KH Enterprise has assumed or received assignments of Safeway's funding sources. They are also relevant to identifying fraudulent transfers and transfers to insiders and explaining the thus far unexplained disappearance of significant assets appearing on the Debtor's prior financial statements and tax returns. Numerous responsive documents were obtained via subpoena so the Debtor cannot seriously claim no such documents exist.

15.    Since April 30, 2020, a complete list of any transfers of real, personal, or intangible property in which the Debtor owned any interest to any other person or entity.

    a.    The Debtor failed to produce any documents responsive to this request. These documents are needed to determine Safeway's customers and whether Safeway's former customers have simply switched to doing business with KH Enterprise or other Sanders entities. They are also needed to determine whether KH Enterprise has assumed or received assignments of Safeway's funding sources. They are also relevant to identifying fraudulent transfers and transfers to insiders and explaining the thus far unexplained disappearance of significant assets appearing on the Debtor's prior financial statements and tax returns. Numerous responsive documents were obtained via subpoena so the Debtor cannot seriously claim no such documents exist.

16.    Any and all documents relating to transactions with or amounts owed to insiders or

04295744

affiliates, as those terms are defined in the Bankruptcy Code, of the Debtor.

    a.    The Debtor failed to produce any documents responsive to this request. These documents are needed to determine Safeway's customers and whether Safeway's former customers have simply switched to doing business with KH Enterprise or other Sanders entities. They are also needed to determine whether KH Enterprise has assumed or received assignments of Safeway's funding sources. They are also relevant to identifying fraudulent transfers and transfers to insiders and explaining the thus far unexplained disappearance of significant assets appearing on the Debtor's prior financial statements and tax returns. Numerous responsive documents were obtained via subpoena so the Debtor cannot seriously claim no such documents exist.

17.    Any and all documents relating to KH Enterprise LLC.

    a.    The Debtor failed to produce any documents responsive to this request. These documents are obviously relevant for determining the relationship between the Debtor and KH Enterprise, whether KH Enterprise is the Debtor's successor, and whether KH Enterprise has received fraudulent transfers from the Debtor. Numerous responsive documents – **including a $53,000 cash transfer from Safeway to KH Enterprise days before it hired its bankruptcy counsel and an approximately $11,000 transfer from Safeway to KH Enterprise two months post-petition** – were obtained via subpoena so the Debtor cannot seriously claim no such documents exist.

18.    Any and all documents reflecting transfers to KH Enterprise LLC or any other entity that has an owner, member, or manager in common with the Debtor.

    a.    The Debtor failed to produce any documents responsive to this request. These documents are obviously relevant for determining the relationship between the Debtor and KH Enterprise, whether KH Enterprise is the Debtor's successor, and whether KH Enterprise has received fraudulent transfers from the Debtor. *See also* (a) to No. 17.

### SAFEWAY'S DEPOSITION

On April 12, 2023, TSL's counsel and Sean Guy, counsel for NorthPoint, took Safeway's 2004 Examination. Ms. Sanders was Safeway's sole corporate representative and arrived thirty minutes late to the deposition. Ms. Sanders was unable or unwilling to answer numerous basic questions within the scope of the examination topics listed in the 2004 Motion. Moreover, either

intentionally or out of ignorance, Ms. Sanders frequently provided testimony that was simply false, thereby calling into question the reliability of the limited information she did provide. Accordingly, in addition to failing to comply with the Court's order to produce documents, the Safeway Parties also failed to comply with the Court's order to produce a witness who was competent to testify truthfully regarding the examination topics.[4] For these reasons, and as explained more fully below, the Court should hold both the Debtor and Ms. Sanders, individually, in civil contempt and award the relief requested herein.

A.    **The Safeway Parties provided false testimony regarding transfers by the Debtor to KH Enterprise, Ms. Sanders' involvement in KH Enterprise, and money she received from KH Enterprise.**

Ms. Sanders testified that she has absolutely no involvement in KH Enterprise, no ownership of KH Enterprise, has received no money from KH Enterprise, and knows nothing about KH Enterprise's revenues. (Ex. 2 p. 14, 49, 94-95, 156-67). Ms. Sanders testified that KH Enterprise is owned by her husband, and before that, was owned by her mother, Helen Banks.[5] Ms. Sanders additionally testified that Safeway has never made any transfers to KH Enterprise. (*Id.* p. 52). However, KH Enterprise's 2022 Annual Report filed with the Secretary of State on September 6, 2022 lists Ms. Sanders as KH Enterprise's Manager and Member. (Doc. 43-1).[6] Moreover, on her 2021 tax returns, Ms. Sanders represented that she owned KH Enterprise, that

---

[4] TSL's counsel specifically stated that he was keeping the deposition open until all responsive documents were produced and Ken Sanders made himself available to testify regarding topics Ms. Sanders claimed to be incompetent to testify about. (Doc. 2 pp. 109-110, 159).

[5] Though Ms. Sanders testified her husband acquired KH Enterprise from her mother, Ms. Sanders claimed to have essentially no knowledge regarding the details of the acquisition or any aspect of the business her husband supposedly owns and runs and from which she receives payment. (Doc. 2 p. 14-15, 19-23).

[6] On February 15, 2023, after the bankruptcy case was filed, KH Enterprise filed an amendment with the Secretary of State removing Ms. Sanders as a manager/member of KH Enterprise. However, KH Enterprise produced no documents regarding its organizational structure as ordered by the Court.

she materially participated in KH Enterprise's business operations, and reported $103,944 of income from KH Enterprise. (**Ex. 3, 2021 Tax Return Excerpts**). And contrary to her testimony, subpoenaed bank records show that KH Enterprise has paid Ms. Sanders at least $28,500 since December 1, 2022. (**Ex. 4, KH Payments to Kina Sanders**).

Most troubling, Ms. Sanders provided false testimony in an attempt to hide a significant cash transfer from Safeway to KH Enterprise (undisclosed on Safeway's schedules) just before Safeway's bankruptcy filing. When TSL's counsel asked Ms. Sanders about a $55,000 transfer from Wells Fargo Account 4277 to Wells Fargo Account 4759 (which appeared on the December 31, 2022 bank statement provided by Safeway's counsel in advance of the deposition), Ms. Sanders testified that Account 4759 was a charge account and the money was used for personal expenses. (Ex. 2 p. 98-99). However, Wells Fargo's and Trustmark's subpoena responses – obtained after the deposition – demonstrated that Account 4759 is actually a business checking account, and that Ms. Sanders withdrew $53,000 in cash from Account 4759 shortly after the transfer in order to purchase a $53,000 cashier's check payable to KH Enterprise which was deposited into KH Enterprise's Trustmark bank account on December 27, 2022, just days before *KH Enterprise* paid $1,700 to Safeway's bankruptcy counsel and a little more than two weeks before Safeway's January 13, 2023 bankruptcy filing. (**Ex. 5, Transfers to KH and Checks to B. Guy**).[7] BankPlus's subpoena response – also obtained after the deposition – showed that Safeway

---

[7] Accordingly, contrary to page 20 of the Debtor's Schedules, the source of the compensation paid to the Debtor's attorney was not the Debtor. It was KH Enterprise, further underscoring that KH Enterprise is simply a continuation of Safeway.

transferred an additional $10,461.54 ($9,160 + $1,311.54) to KH Enterprise on or about March 23, 2023 – **two months post-petition**. (*Id.*).[89]

Of course, because Safeway declined to obey the Court's order to produce all of its banking records during the applicable time period, this information was not known at the time of the deposition. While Safeway filed a motion to reconsider the Court's order to produce banking records (which it subsequently withdrew), representing to the Court that obtaining the records would be too costly (Doc. 54 ¶ 3), Ms. Sanders admitted that she did not obtain quotes from Trustmark, BankPlus, or Wells Fargo to retrieve the records and had no idea how much the banks would charge. (Ex. 2 pp. 39-40). She admitted she did not contact Wells Fargo or BankPlus at all. (*Id.* p. 37).[10] Ms. Sanders admitted she saved Wells Fargo statements, but she did not know how far back they went, and again, did not produce all of them in advance of the deposition. While she promised to produce them after the deposition, as well as Safeway's American Express statements, she subsequently declined to do so. (*Id.* pp. 37-38, 41). In short, the Safeway Parties did not even make a good faith attempt to comply with the Safeway 2004 Order; they promised to produce responsive documents after the deposition but then reneged on the promise; and they told the Court

---

[8] The October-December 2022 Wells Fargo statements also show substantial transfers to insiders just before Safeway filed its bankruptcy petition. Specifically, Ms. Sanders testified that the Citi credit card shown on the Wells Fargo bank statements was in her name and the thousands of dollars of payments to Citi were for her personal expenses. (Ex. 2 pp. 36, 97-98). Ms. Sanders went on to identify numerous other payments from Safeway's account for personal expenses, including private school tuition, car loans, home mortgage payments, personal insurance, more than $10,000 in cash withdrawals, dining out, and spa visits, among others. (*Id.* 98-106).

[9] Ms. Sanders testified that the BankPlus account was opened in the middle of 2022 and closed shortly thereafter. (Doc. 2 p. 38). However, Safeway's Schedules state both that no financial accounts had been closed within one year of its bankruptcy filing and that it had no deposits. (Doc. 28 pp. 3, 17). While TSL does not have Safeway's April BankPlus account statement, Safeway was conducting transactions on the account as late as March 31, 2023.

[10] Wells Fargo and Trustmark did not charge TSL anything for obtaining the bank records. TSL agreed to pay BankPlus $86 for the records.

it would be too costly to obtain the records without even knowing the cost. While TSL has obtained records from Trustmark, Wells Fargo, and BankPlus, TSL does not know whether other accounts exist at other financial institutions.[11]

**B.      The Safeway Parties were unable or unwilling to testify regarding Safeway's customers and business activities.**

The Court ordered Safeway to provide a witness to testify regarding "[t]he Debtor's business dealings with its customers" (Topic 3) and "[t]he nature of the Debtor's business, including the Debtor's customers or any other person or entity who pays or has paid the Debtor for services." (Topic 8). As noted previously, these topics are highly relevant to identifying Safeway's customers and whether those customers are now customers of KH Enterprise.

However, Ms. Sanders – Safeway's sole owner – could not identify a **single** one of Safeway's customers for whom it has performed trucking services, much less its largest customers, or a single person or entity that had ever paid Safeway for trucking services. (Ex. 2 pp. 80-81).[12] Ms. Sanders stated that Mr. Sanders would know the answers to questions regarding Safeway's customers; however, Mr. Sanders was not there to testify and has refused to testify on Safeway's behalf despite Safeway's counsel indicating he would do so. (*Id.*; Ex. 1). In addition to Ms. Sanders' failure or refusal to provide information regarding Safeway's customers and business activities, Safeway failed to produce any of the documents included with Requests 9-12 which might have shed light on Safeway's customers, even though such documents unquestionably exist. Ms. Sanders testified that Safeway created invoices it submitted to its customers and that it kept up with its accounts receivable and payable in Quickbooks. (Ex. 2 pp. 45-46). She also testified

---

[11] Ms. Sanders testified that her only personal account was at Wells Fargo. (Doc. 2 p. 35-36). However, bank records and the financial statement she submitted to Trustmark show she also has a personal account at Magnolia Federal Credit Union.

that Safeway's CPA firm, Silas and Simmons, had this information, but Safeway never asked Silas and Simmons for the information. (*Id.* pp. 44-45). Once again, Safeway failed to obey the Court's order to produce a witness who was competent to testify truthfully regarding the examination topics listed in Exhibit A.

**C.   The Safeway Parties were unable or unwilling to testify regarding Safeway's revenues, expenses, profits, and financial condition.**

The Court ordered Safeway to provide a witness to testify about Safeway's revenues, expenses, and profits since March 6, 2021 (Topic 5) and its financial condition (Topic 7) and to produce its 2020 and 2021 tax returns (Request 5) and financial statements, profit and loss statements, balance sheets, and any other compilation of Safeway's financial condition (Requests 5, 13). However, Ms. Sanders was unable to provide any information regarding Safeway's revenues, expenses, or profits, (Ex. 2 pp. 50-51), and Safeway failed to produce its 2020 tax return, which TSL was forced to subpoena from Silas and Simmons. Safeway also failed to produce any of the financial documents included in Request 13, such as financial statements and profit and loss statements, which unquestionably exist as demonstrated by the subpoena responses from Silas and Simmons, Trustmark National Bank, Wells Fargo, and BankPlus. (**Ex. 6, Documents Responsive to Request 13**).

**D.   The Safeway Parties failed to testify truthfully or produce documents regarding Safeway's assets, the transfer and disposition of Safeway's assets, or the unexplained disappearance of Safeway's assets.**

The Court ordered Safeway to produce a witness who could testify about Safeway's property (Topic 4), any trucks, trailers, equipment, or other assets purchased, sold, transferred, or otherwise disposed of by Safeway since March 6, 2021 (Topic 6), transfers of assets, contracts, or business from Safeway to any other person or entity (Topic 15), and Safeway's assets (Topic 7).

Similarly, the Court ordered Safeway to produce documents relating to any transfer of assets by Safeway (Request 14-15, 18) and all of its contracts (Request 11).

In this regard, Ms. Sanders' testified that Safeway only leased its vehicles and had never owned a vehicle (Ex. 2 p. 63). This testimony was undeniably false. To begin with, Safeway's schedules identify two owned trucks. (Doc. 28 p. 7). Moreover, Ms. Sanders/Safeway claimed depreciation on 48 trucks and trailers on her/its 2021 tax returns. (Ex. 3). Further, documents TSL obtained through subpoenas – but which were not produced by Safeway – which included bills of sale, certificates of title, security agreements, inventories, and the like – unequivocally show that Safeway purchased and sold numerous vehicles. Indeed, Ms. Sanders herself submitted a Financial Statement to BankPlus representing that Safeway owned vehicles and equipment valued at roughly $1.8 million. (**Ex. 7, Documents Showing the Ownership, Purchase, and Transfer of Vehicles and Other Assets**). In sum, Ms. Sanders either knowingly provided false testimony, or she lacked basic knowledge regarding Safeway's assets. And the Safeway Parties, contrary to the Court's Order, failed to produce any contracts or other documentation reflecting the purchase, sale, or disposition of its assets, the "leases" Ms. Sanders claimed Safeway entered into, or any proof that leased vehicles were returned to their owners.

Troublingly, Ms. Sanders was unable to explain or provide any documentation as to where these 48 vehicles and trailers went. After Ms. Sanders testified that all 48 "leased" vehicles were returned to their owners, Ms. Sanders was unable to identify who those owners were besides TSL and Mack. (Ex. 2 p. 70). At this point, it is simply unknown what happened to the nearly $1.8 million in trucking equipment Safeway told BankPlus it owned on May 23, 2022.

E.  **Safeway provided additional false testimony regarding its bank accounts and financing and failed to produce responsive documents that would have shown Safeway's testimony was false.**

As noted previously, Safeway claimed without basis that it would be prohibitively expensive for it to obtain its banking records in order to comply with the Court's order. For that reason, TSL's counsel asked Ms. Sanders whether Safeway utilized online banking, and Ms. Sanders testified it did not. However, Wells Fargo's subpoena response reflects numerous, large online transfers out of Account 4277. (Ex. 5; Ex. 2 p. 30).[13] Again, Safefway's failure to comply with the Court's order to produce its banking records prevented TSL's counsel from challenging her on these answers.

Additionally, TSL's counsel asked Ms. Sanders whether Safeway had ever entered into a factoring agreement. TSL's counsel specifically asked her if she understood what a factoring agreement was and whether Safeway had ever assigned its receivables. Ms. Sanders testified that she knew what a factoring agreement was and that Safeway had never assigned its receivables. (Ex. 2 p. 92). However, contrary to her deposition testimony, Ms. Sanders produced documents to her accountant showing that Safeway, in fact, had sold its accounts receivable to three different factoring companies. (**Ex. 8, Factoring Documents**). Bank records suggest Safeway and KH Enterprise have entered into contracts with other factoring companies as well. Although the Court ordered Safeway to produce all of its contracts and information related to its accounts receivable and payable, Safeway failed to produce documents relating to the factoring agreements and falsely testified that none existed.

---

[13] Ms. Sanders initially testified that Safeway had not had any credit cards since January 1, 2020. Only when TSL's counsel followed up by asking her if Safeway ever had a credit card at American Express did Ms. Sanders confess to the American Express Card. (Doc. 2 p. 30).

**F.      Safeway falsely testified that none of its former drivers now drive for KH Enterprise.**

Ms. Sanders testified that none of Safeway's current or former drivers are driving for KH Enterprise. (Ex. 2 p. 56). This is simply not true. (**Ex. 9, Common Drivers**). Ms. Sanders additionally testified that Safeway has not assigned any of its contracts or business to KH Enterprise. (*Id.* p. 85). However, the banks' subpoena responses show that KH Enterprise's two main customers are Truckers Exchange and Ashley Farms & Trucking. KH Enterprise did no business with Truckers' Exchange prior to January 5, 2023 and did no business with Ashley Farms & Trucking prior to November 30, 2022. Before then, they did business with Safeway but not KH Enterprise. (**Ex. 10, Examples of Customer Payments**). When the undersigned spoke with Ashley Farms & Trucking, the Ashley Farms representative stated that Ken Sanders told him Safeway was changing its name to KH Enterprise – providing further evidence that KH Enterprise is a mere continuation of Safeway.

**G.      Despite TSL agreeing to give Safeway additional time to produce documents and repeatedly requesting a date to depose Mr. Sanders on topics Ms. Sanders was unable to answer, Safeway stated it will not be producing more documents and has refused to permit Mr. Sanders to testify.**

In a good faith attempt to avoid having to file this motion, TSL's counsel agreed to give Safeway until April 18, 2023 to produce the documents it failed to produce in advance of the deposition, and Safeway agreed to supplement its document production by April 18. Moreover, TSL's counsel repeatedly requested a date to depose Mr. Sanders on matters Ms. Sanders testified only Mr. Sanders could answer, such as information relating to Safeway's customers. (Ex. 1). However, after initially agreeing to supplement its production and offer a deposition date for Mr. Sanders, Safeway's counsel eventually stated that no further documents would be produced, and Safeway has refused to offer Mr. Sanders to testify on Safeway's behalf. Accordingly, TSL has

attempted to resolve this dispute in good faith without having to file this motion. (**Ex. 11, Good Faith Certificate**).

## ARGUMENT

### A.     The Court Should Hold Safeway in Civil Contempt.

A bankruptcy court may hold a person or entity in civil contempt for failing to comply with an order, such as an order issued pursuant to Bankruptcy Rule 2004. *See In re Chateaugay Corp.*, 920 F.2d 183, 187 (2d Cir. 1990); *In re Dieffenbacher*, 556 B.R. 79, 83 (Bankr. E.D.N.Y. 2016). Indeed, "[t]he authority to impose sanctions for contempt of an order is an inherent and well-settled power of all federal courts – including bankruptcy courts." *In re Brown*, 511 B.R. 843, 848–49 (Bankr. S.D. Tex. 2014) (citing *United States v. Fidanian*, 465 F.2d 755, 757 (5th Cir. 1972); *In re Bradley*, 588 F.3d 254, 266 (5th Cir. 2009); *In re Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997)). Contempt is appropriate when (a) there was a court order in effect, (b) the order required specific conduct by the respondent, and (c) the respondent failed to comply with the court order. *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004).

Civil contempt sanctions may be imposed both to coerce a party into compliance with the Court's order and to compensate the complainant for losses sustained, including reasonable costs and attorneys' fees. *See Local 28 of the Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986). Thus, in a contempt proceeding, the Court has the discretion to award costs and attorneys' fees to compensate the party forced to file a motion to compel compliance with the Court's orders. *See In re Norrie*, 2016 WL 6407839, at *7 (B.A.P. 9th Cir. Oct. 26, 2016). Civil contempt sanctions may be imposed upon notice and an opportunity to be heard. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) (civil contempt sanctions may

be imposed to coerce compliance and to compensate the other side for losses sustained as a result of the contempt).

As demonstrated above, there is no question that Safeway is in civil contempt of the Safeway 2004 Order. Specifically, Safeway failed (a) to produce documents the Court ordered it to produce and (b) to designate a corporate representative who would testify accurately and truthfully regarding the examination topics listed in Exhibit A to the motion. Both the information TSL obtained through subpoenas and Ms. Sanders' own testimony confirm that Safeway failed to produce, or even make a good faith effort to produce, responsive documents the Court ordered it to produce. Ms. Sanders was also unable or unwilling to testify regarding numerous matters within the scope of the Safeway 2004 Order, such as Safeway's customers and its revenues, expenses, and profits. But most troublingly, Ms. Sanders repeatedly provided testimony that was simply untrue. In many instances, it is difficult to reach any other conclusion than that Ms Sanders provided knowingly false testimony. For all of these reasons, Safeway is in contempt of the Safeway 2004 Order.

**B.      The Court Should Hold Kina Sanders in Civil Contempt in their Individual Capacity.**

In *Wilson v. United States*, 221 U.S. 361, 376 (1911), the Supreme Court held that individuals may be punished for contempt for failing to cause an entity to comply with a court order:

> A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

The Supreme Court's holding in *Wilson* has since been followed by numerous courts as the majority rule in the United States. *See Greater St. Louis Construction Laborers Welfare Fund v.*

*Hance Excavating*, LLC, 2008 WL 544718 (E.D. Mo. 2008) (ordering the organizer of an LLC to show cause why he and the LLC should not be held in contempt for the LLC's failure to comply with an order to provide post-default discovery of the LLC's financial information); *Powell v. Collier Constr. LLC K A*, 2008 WL 11513012, at *3 (W.D. La. Dec. 4, 2008) (holding LLC members in contempt of order directed to LLC since a contrary rule would insulate those in control of the LLC from sanctions for causing the organization not to abide by a court order); *Cent. States, Se. & Sw. Areas Health & Welfare & Pension Funds v. Transcon Lines*, 1995 WL 472705, at *8 (N.D. Ill. Aug. 8, 1995) (corporate officer may be held in contempt for causing corporation's failure to comply with court order); *Total Quality Logistics, LLC v. TW Transp. Sols., LLC*, 2012 WL 2045948, at *3-4 (S.D. Ohio June 6, 2012) (ordering the corporate officer to appear for a show-cause hearing as a result of corporation's failure to comply with court order); *American Airlines, Inc. v. Allied Pilots Ass'n*, 53 F. Supp. 2d 909, 941 (N.D. Tex. 1999) (imposing contempt sanctions against officers of an unincorporated association for failure to cause the organization to comply with court order); *Connolly v. J.T. Ventures*, 851 F.2d 930, 935 (7th Cir. 1988) ("a command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt"); *N.L.R.B. v. Maine Caterers, Inc.*, 732 F.2d 689, 691 (1st Cir. 1984) ("[A]n officer, responsible for the corporation's affairs and for its disobedience, may be held liable for contempt."); *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 2022 WL 1301772, at *6 (E.D. Ky. Mar. 23, 2022) (holding LLC members in contempt for LLC's violation of discovery orders and since "[a] rule which would allow a corporate officer to remain deliberately ignorant of the particulars of a court

order, and thereby avoid a contempt citation, would defy common sense."); *Elec. Workers Pension Tr. Fund of Loc. Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378-79 (6th Cir. 2003) ("Pipia, as an officer of the corporation and the one responsible for the corporation's affairs, was subject to the court's order just as the corporation itself was. Because Pipia either prevented compliance or failed to take appropriate action within his power for the performance of the corporate duty, the district court had the authority to hold Pipia in contempt.").

Kina Sanders is the sole owner of Safeway. As the sole owner, Ms. Sanders is solely responsible for Safeway's actions, including its utter failure to comply with the Safeway 2004 Order to produce the documents listed in Exhibit B. Ms. Sanders is also responsible for her failure to provide accurate and truthful testimony and for testimony that can only reasonably be described as knowingly false. As such, Ms. Sanders bears responsibility for Safeway's compliance with the Court's orders and is the reason Safeway has failed to comply with the Safeway 2004 Order. Therefore, in addition to Safeway, the Court should hold Kina Sanders in contempt in her individual capacity.

## C.  Relief Requested

TSL should not be forced to bear additional costs and attorneys' fees just because the Safeway Parties refused to comply with the Court's order. Moreover, it is clear that the Safeway Parties have no intention of complying with the Court's orders absent sanctions designed to encourage compliance. (Ex. 1). Accordingly, TSL respectfully requests that the Court enter an order:

    1)  holding the Safeway Parties in civil contempt of the Safeway 2004 Order;

    2)  requiring the Safeway Parties, jointly and severally, to pay TSL's costs and attorneys' fees incurred as a result of the Safeway Parties' contempt, including TSL's costs and attorneys' fees incurred in preparing and prosecuting this motion, in obtaining records via subpoena, in re-deposing Safeway, and in preparing for

Safeway's re-deposition, within 30 days of entry of an order granting this motion;

3) imposing a $100 per diem fine on the Safeway Parties, jointly and severally, for each day they continue to fail to comply with the Safeway 2004 Order; and

4) compelling the Safeway Parties to fully comply with the Safeway 2004 Order by producing all responsive documents in Safeway's possession, custody, or control and making Safeway – through both Kina Sanders and Ken Sanders – available for a deposition on a date certain.

**WHEREFORE, PREMISES CONSIDERED**, TSL respectfully requests that the Court enter an order (1) holding the Safeway Parties in civil contempt of the Safeway 2004 Order; (2) requiring the Safeway Parties, jointly and severally, to pay TSL's costs and attorneys' fees incurred as a result of the Safeway Parties' contempt, including TSL's costs and attorneys' fees incurred in preparing and prosecuting this motion, in obtaining records via subpoena, in re-deposing Safeway, and in preparing for Safeway's de-deposition, within 30 days of entry of an order granting this motion; (3) imposing a $100 per diem fine on the Safeway Parties, jointly and severally, for each day they continue to fail to comply with the Safeway 2004 Order; and (4) compelling the Safeway Parties to fully comply with the Safeway 2004 Order by producing all responsive documents in Safeway's possession, custody, or control and making Safeway – through both Kina Sanders and Ken Sanders – available for a deposition on a date certain. TSL requests such other relief as the Court deems appropriate.

Dated: May 2, 2023.

Respectfully submitted,

**TRI-STATE TRUK CENTER, INC. D/B/A TRI-STATE LEASING**

By: */s/ William D. Drinkwater*
Of Counsel

21

OF COUNSEL:

James A. McCullough, III (MSB # 10175)
jmccullough@brunini.com
William D. Drinkwater (MSB # 103913)
wdrinkwater@brunini.com
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
190 East Capitol Street, Suite 100 (39201)
Post Office Drawer 119
Jackson, Mississippi  39205
Telephone: (601) 948-3101

## EXHIBIT A

### EXAMINATION TOPICS

1.　　　Any of the documents identified or requested in Exhibit B.

2.　　　The Debtor's Schedules/Statements.

3.　　　The Debtor's business dealings with its customers.

4.　　　All matters related to the acts, conduct, or property of the Debtor, and to any matter that may affect the administration of the Debtors' estate.

5.　　　Since March 6, 2021, the Debtor's revenues, expenses, and profits.

6.　　　Since March 6, 2021, any trucks, trailers, equipment, or other assets purchased, sold, transferred, or otherwise disposed of by the Debtor.

7.　　　All matters related to the assets, liabilities, and financial condition of the Debtor, including the substance of all financial and accounting records of the Debtor.

8.　　　The nature of the Debtor's business, including the Debtor's customers or any other person or entity who pays or has paid the Debtor for services.

9.　　　The business affairs of the Debtor, including past, current, and future business activities of the Debtor.

10.　　　The nature, extent, location, and value of the Debtor's assets, including the ownership of the location where the Debtor does business.

11.　　　The Debtor's liabilities.

12.　　　The formation, organization, and governance of the Debtor.

13.　　　The relationship between the Debtor and any affiliates of the Debtor.

14.　　　The monetary holdings of the Debtor, including the location, account numbers, and balances of all bank accounts and other monetary holdings.

15.　　　Since December 1, 2020, any transfers of assets, contracts, or business, from the Debtor to any other person or entity.

16.　　　KH Enterprise LLC, including its formation, affiliation with the Debtor, the nature of its business, and its management and employees.

17.　　　Whether any of the Debtor's owners, members, or managers are owners, members,

managers, or otherwise involved with any other company.

## EXHIBIT B

## REQUESTS FOR PRODUCTION

## GENERAL INSTRUCTIONS

The term "document" means all written or electronically stored information which includes, but is not limited to, all letters, correspondence, writings, financial statements, rent rolls, operating reports, bank statements, bank reconciliations, receipts, invoices, canceled checks, check registers, cash receipts and cash disbursement journals, leases, deeds of trust, mortgages, accounting journals, inventory reports, contracts, detail regarding improvements, repairs and maintenance, drawings, notes, memoranda, telegrams, charts, appraisal reports, purchase or sale proposals, photographs, photographic slides, sound recordings, images, electronic mail and memoranda and other data or data compilations stored in any medium from which information can be obtained, including but not limited to, records stored in computer hard drives, discs, diskettes, tapes, and/or other portable storage products and personal digital assistants in the actual or constructive control or custody of the Debtor or the Examinee.

The phrase "relating to" means consisting of, referring to, reflecting, or being legally, logically, or factually connected in any way with the subject matter.

## DOCUMENTS TO BE PRODUCED

19.     All of the Debtor's founding, organizational, or governing documents, including, but not limited to, articles of formation, bylaws, operating agreements, membership agreements, and the like, and all documents amending or supplementing any such documents.

20.     Since January 1, 2020, all bank statements, account statements, check images, deposits, and any other documents reflecting deposits, withdrawals, balances, or transfers for any account in which a Debtor is or has been an owner or signatory.

21.     The signature card(s), including amendments, for any financial account in which a Debtor is or has been an owner or signatory.

22.     Since March 6, 2021, all documents relating to any monetary holdings in which the Debtor has had any interest, including but not limited to checking accounts, savings accounts, money market accounts and/or investment accounts, copies of all certificates of deposit, stock certificates, bonds and/or mutual funds statements, and any other cash deposits or holdings.

23.     Copies of the Debtor's federal and state income tax returns for the 2020 and 2021 tax years.

24.     All of the Debtor's minute books, corporate records, minutes, amendments to

minutes, actions by managers or members, amendments to records, and any and all related records and/or documents.

25.     Any and all documents relating to any pending litigation involving the Debtor or the Debtor's members.

26.     Any and all documents relating to any claims against the Debtor or any of its members which have been settled or otherwise resolved.

27.     Since March 6, 2022, all invoices/bills submitted by the Debtor.

28.     Since March 6, 2022, all purchase orders or similar documents requesting services from the Debtor.

29.     Since March 6, 2022, all contracts the Debtor has been a party to.

30.     Since March 6, 2022, all documents relating to any accounts receivable or payable of the Debtor.

31.     Since March 6, 2021, any financial statement, profit and loss statement, balance sheet, or any other compilation of the financial condition of the Debtor.

32.     Since April 30, 2020, all documents relating to any transfers of assets from the Debtor to any other person or entity.

33.     Since April 30, 2020, a complete list of any transfers of real, personal, or intangible property in which the Debtor owned any interest to any other person or entity.

34.     Any and all documents relating to transactions with or amounts owed to insiders or affiliates, as those terms are defined in the Bankruptcy Code, of the Debtor.

35.     Any and all documents relating to KH Enterprise LLC.

36.     Any and all documents reflecting transfers to KH Enterprise LLC or any other entity that has an owner, member, or manager in common with the Debtor.

## CERTIFICATE OF SERVICE

I hereby certify that I have this date caused to be filed a true and correct copy of the foregoing

with the Clerk of the Court using the Court's electronic filing system, which caused notice of such filing

to be delivered electronically to all counsel of record.  I additionally certify that I have this day caused

a copy of the above and foregoing to be served on the following by United States Mail, postage prepaid:

Safe Way Transport, LLC
c/o Kina Sanders
907 S. State Street
Jackson, MS 39201

Bryant D. Guy
P.O. Box 10173
Jackson, MS 39286

Stephen Smith
1052 Highland Colony Parkway, Suite 100
Ridgeland, MS 39157

United States Trustee
501 East Court Street
Suite 6-430
Jackson, MS 39201

Dated:  May 2, 2023.

By: */s/ William D. Drinkwater*

## **VERIFICATION**

STATE OF MISSISSIPPI

COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the said County and State, William D. Drinkwater, who being first duly sworn on oath states that the facts set forth in the foregoing *Verified Motion for Contempt and Award of Costs, Fees, and Penalties* are true and correct to the best of his knowledge, information, and belief.

William D. Drinkwater

SWORN TO AND SUBSCRIBED before me, this the 2nd day of May, 2023.

NOTARY PUBLIC

My Commission Expires:

2-11-27



04295744

27